HAMBLETON v. DIGNOWITY et al.
(No. 5780.)

(Court of Civil Appeals of Texas. San Antonio. June 21, 1919.)

1. APPEAL AND ERROR ☞1188—ISSUANCE OF MANDATE—CONSTRUCTION OF ORDER.

Order directing issuance of mandate within 12 months from certain date, "upon the paying of costs or making affidavit in lieu thereof," did not require motion for issuance of mandate within such time, but merely that costs be paid or affidavit in lieu thereof be made within the 12 months.

2. HUSBAND AND WIFE ☞244 — COSTS ON REVERSAL OF JUDGMENT—WIFE'S SEPARATE ESTATE—LIABILITY OF HUSBAND.

Where judgment for husband and wife is reversed, and cause remanded, with costs to appellant, husband is liable for costs, though suit involved wife's separate estate.

3. APPEAL AND ERROR ☞1189—ISSUANCE OF MANDATE—AFFIDAVIT OF INABILITY TO PAY COSTS.

Where judgment for husband and wife was reversed, and cause remanded, with costs to appellant, the filing of wife's affidavit of inability to pay costs or give security, in which she did not purport to act as husband's agent, as authorized by Rev. St. 1911, art. 11, but merely excused his failure to join therein, was not sufficient compliance with article 1635, requiring such affidavit by "party against whom costs are adjudged," to warrant issuance of mandate without costs; the affidavit of all parties being necessary under the statute.

**4. APPEAL AND ERROR ☞1189—MANDATE—COSTS—ABILITY TO PAY—EVIDENCE.**

Evidence *held* to show that appellees, against whom costs had been awarded on the reversing of judgment and remanding of cause, and who filed affidavit of inability to pay costs or give security, had ability to pay costs.

**5. APPEAL AND ERROR ☞1189—MANDATE—COSTS—OWNERSHIP OF PROPERTY—AFFIDAVIT.**

Persons who own property not exempt are not entitled to issuance of mandate upon affidavit of inability to pay costs or give security, but are required to sell property and pay costs.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action between Imogene T. Hambleton and Hallie B. Dignowity and others. Judgment for the latter reversed, and cause remanded. On motion to issue mandate. Overruled.

Moody & Boyles, of Houston, for appellant. W. W. King and J. D. Guinn, both of San Antonio, for appellees.

MOURSUND, J. The judgment rendered in the above-entitled case by the district court was reversed, and the case remanded for a new trial, on April 27, 1917. 196 S. W. 864. The motions for rehearing were overruled on June 30, 1917. Writ of error was denied on February 6, 1918. No mandate was applied for within 12 months from the overruling of the motion for new trial, although appellees had nearly 6 months within which to do so after the papers were returned from the Supreme Court. Thereupon, on August 20, 1918, the clerk of this court issued a certificate:

"That more than 12 months have elapsed since the overruling of the motion for rehearing 'in said cause by the Court of Civil Appeals and that no mandate has been taken out in said cause."

This certificate was filed in the trial court on November 25, 1918, with a motion to dismiss the cause for failure to take out the mandate within the time required by law. Thereupon appellees, on November 25, 1918, filed their motion, asking this court to recall said certificate. That motion was overruled; this court being of the opinion that the 12 months in which the mandate should have been taken out dated from the overruling of the motion for a new trial, and that additional time could not be awarded, unless the Supreme Court failed to pass on an application for writ of error in time to enable the parties to take out the mandate, in which event a reasonable time would, by necessity, be granted in order to prevent deprivation of a legal right, because of no fault of the parties. A writ of mandamus was applied for, and the Supreme Court being of the opin-

ion that the 12 months should be estimated from the date of the refusal of the writ of error, granted the petition, and on February 6, 1919, entered an order directing the issuance of the writ, and that such writ should direct the recall of said certificate of non-issuance of mandate, and that a mandate issue at any time within 12 months from February 6, 1918, upon the paying of costs of court or making affidavit in lieu thereof. On March 31, 1919, this court, without awaiting the service of the writ, entered an order recalling the certificate, and it was returned to this court. As the certificate did not state the legal conclusion that no mandate had been applied for as required by law, and the facts stated did not, under the holding of the Supreme Court, affect the rights of any one, it seems that the withdrawal of the certificate was really unnecessary.

On April 1, 1919, appellees filed a motion for the issuance of the mandate, the ground urged being that appellees had duly filed their affidavit of inability to pay costs or give security therefor. Attached to this motion are affidavits filed in this court on December 16, 1918, one by appellee Dorothy Currier and the other by appellee, Hallie B. Dignowity. Mrs. Currier stated in her affidavit that she and her husband, Donald E. Currier, are too poor to pay the costs of court, and both are unable to give security therefor; that her husband is a lieutenant in the active service of the United States Army, and for that reason has not joined in the making of the affidavit, that they have no property except wearing apparel and that her husband's pay is barely sufficient for the support of themselves and minor child. Before stating the case further, we wish to note that an affidavit had been filed in this court on November 21, 1918, and was indorsed by the clerk as a motion. At the time the motion to withdraw the certificate was argued, the court, from the bench, called attention to the fact that the affidavit could not take the place of the motion provided for in article 1635, R. S. 1911, whereupon counsel for appellees withdrew the instrument, and notation to that effect was made upon the docket. This is unimportant, and mentioned only because in argument it has been suggested that the clerk's treating the first affidavit as a motion indicated a practice to dispense with the filing of a motion. As a matter of fact, upon the former appeal of this case the counsel for appellees accompanied their affidavit with a motion, and it has not been the practice of this court to dispense with the filing of the motion.

On April 7, 1919, Mrs. Hambleton, appellant, filed an answer to the motion to issue mandate, contending that the time had expired in which the mandate could issue, namely, 12 months from the refusal of the writ of error. On May 9, 1919, Jos. Murray,

clerk of this court, filed an instrument contesting the motion to issue the mandate. On May 12, 1919, Mrs. Hambleton filed a similar instrument. In reply additional affidavits were filed by appellees.

The questions presented for decision are: (1) Are appellees precluded from obtaining the issuance of the mandate because of their failure to file the motion for the issuance thereof within 12 months from the refusal of the writ of error? (2) If the motion was unnecessary, then did the filing of the affidavits of Mrs. Currier and Hallie Dignowity constitute a compliance with article 1635, R. S. 1911, or was it necessary that the affidavit should be made by all the necessary parties? (3) If the affidavits are sufficient, are appellees entitled to a mandate in view of the facts disclosed?

[1] The order entered by the Supreme Court directs the issuance of the mandate "upon the paying of costs of court or making affidavit in lieu thereof." This being the case, we do not feel warranted in refusing to issue the mandate merely because no motion for its issuance was filed within the twelve months. The Supreme Court ordered:

"That respondents issue a mandate at any time within twelve months from the 6th day of February, 1918, upon the paying of costs or making affidavit in lieu thereof."

The language may imply that no mandate could issue after 12 months, but we do not believe that was the intention of the court. As we understand it, if the appellees paid the costs within the 12 months, or in lieu thereof made an affidavit sufficient under the statute, and it was not defeated by contest, the mandate should issue. If appellees took the proper steps within the 12 months, they will not be deprived of the mandate merely because it did not issue before the 12 months expired. The affidavit may be made by the attorney or by an agent. Article 11, R. S. 1911; Harwell v. Furniture Co., 75 S. W. 888. That course was not pursued. Instead thereof, one of the appellees made affidavit that neither she nor her husband was able to pay the costs. She did not purport to act as agent for her husband, but excuses his failure to join by stating he is in the military service of the government, without showing that it was impossible to get his affidavit in a year's time, or authorization to act as his agent.

[2, 3] In the case of Crockett v. Maxey, 4 Willson, Civ. Cas. Ct. App. § 292, 18 S. W. 138, it was held, construing a statute relating to costs in the trial court, that such statute contemplated that the affidavit must be made by the necessary parties to the suit. If that holding is correct, it follows that the language in article 1635, "the party against whom the costs are adjudged," must mean all the parties against whom the costs are adjudged, and not a part of them. The lia-

bility for costs is statutory, and although the suit involves the separate estate of the wife, the husband's liability for costs is just as great as if it involved community property. Speer's Law of Marital Rights, § 506. We believe the filing of the affidavits in question did not constitute a compliance with the statute, such as would entitle appellees to the issuance of the mandate.

[4] We are also, however, of the opinion that, if the affidavits had been sufficient, the contesting affidavits disclose facts showing that the appellees are able to pay the costs. The costs amount to $106.70. It appears that Daniel Currier is a first lieutenant in the army and receives a salary of $166 per month, with certain allowances made by the government, which makes his compensation over $200 per month. His family consists of his wife and one small child. As disclosed by the records filed in this suit, the marriage took place only a few years ago. The statement is made in appellee's motion to recall certificate that he has been in the army for more than a year prior to November 25, 1918.

An attack was also made with respect to the financial ability of Hallie Dignowity and her ability to give security, which was replied to by counter affidavits. It appears from her statement that she had an earning capacity of $40 per week, her employment being with an opera company; but she swore that, after paying for her wardrobe and traveling expenses, she was generally in debt to the company. She also stated that she had not been in good health for three years, and that she had no present employment. She occupied rooms with her father and mother at the Menger Hotel, for which they paid $105 per month. Her father and mother have occupied such rooms since December, 1918, at $75 per month, and the daughter joined them about February 15, 1919, after which time they paid $105 per month. This striking indication of financial ability was explained by the father, Jim Dignowity, by stating that the money he spent was furnished him by New York capitalists, who furnished him money "to travel and operate their mines," and that the money he used was for them; that he had no money except such as he got for specific purposes connected with the mining properties owned by parties for whom he was working. He explained that they stopped at the Menger because his wife was virtually an invalid, and because it is greatly to his interest to stop at respectable hotels, where he can constantly meet the class of people his business calls for. His wife stated in her affidavit:

"Our only means of getting the money to make this trip from New York to San Antonio was by my husband succeeding in so making arrangements with parties in New York by which they advanced him money and necessary expenses to recover said property in consideration of his giving them a portion of said

property when recovered. His reason as stated to me for stopping at the Menger Hotel was that it was cheaper than putting me in a hospital, and because it was the favored stopping place of wealthy men from Mexico and elsewhere, prospecting in Mexican mines, and his best way to interest them in mining property. By this means he has raised enough money to pay our necessary bills, and pay my daughter Hallie's fare from Kansas City, where she was stranded without means to get to San Antonio, and to get to Mexico and pay the immense Mexican tax imposed upon the mines property amounting to about $2,300, all of which money was secured from said New York parties for that purpose, upon Mr. Dignowity's agreement to share with them the prospective mines."

Mr. Dignowity explained that, while it was true that he had procured an injunction bond for $500 to be given in this case by a surety company, he had never paid the premium of $10 due the agent, and that there were judgments against him which he was unable to pay.

The testimony as a whole creates the impression that appellees are people who could pay the costs, if they wanted to, but who do not want to pay them. The showing with respect to Hallie Dignowity's ability to pay or give security for the costs, standing alone, might not justify a refusal of the mandate. There is no showing as to what knowledge Mrs. Currier has concerning her husband's ability to pay, or to give security for the costs. She stated, however, in her affidavit, that his income was barely sufficient for the support of themselves and their minor child. As disclosed by the motion to recall certificate, Lieut. Currier was in France on November 25, 1918, and had been for more than a year. The record does not disclose whether he has returned or not. In Mrs. Currier's affidavit the statement that he is with the expeditionary forces in France was stricken out. During the time he was in France his personal expenses could not have been great, nor can it be conceived that during such time $200 a month was barely sufficient to support his wife and little child. Appellees did not apply for any writ of error, so they knew that, if the writ applied for by appellant was refused, the cause would be remanded, and that the costs were taxed against them. They had a year and a half before December, 1918, when the affidavits were filed in which to make the payment.

[5] We do not think the statute was intended for the protection of persons who have ample income to provide for paying costs, but who are unwilling to deny themselves luxuries in order to pay their just debts, but for persons who are too poor to pay costs. The statute does not provide that any party against whom costs are adjudged, who does not own sufficient property subject to execution, out of which to make the costs, shall be entitled to a mandate upon making affidavit to that effect. Persons who own property not exempt are required to sell it and pay costs. Railway v. Mathews, 28 Tex. Civ. App. 99, 66 S. W. 588, 67 S. W. 788. We do not understand that persons who have an income out of which provision could be made for paying costs are at liberty to ignore the obligation, spend the money for other things, and then obtain a mandate free of charge. When the earning capacity is shown, there should, at least, be some explanation showing the good faith of the parties. The foregoing views have led us to the conclusion that appellees are not entitled to the mandate.

The motion is overruled.